Paul J. Hickey, Esq.  (5-1431)
Richard D. Bush, Esq.  (5-2647)
John A. Coppede, Esq.  (5-2485)
HICKEY & EVANS, LLP
1800 Carey Avenue, Suite 700
P.O. Box 467
Cheyenne, WY  82003-0467
Ph: (307) 634-1525
Fx: (307) 638-7335
*Attorneys for Defendants*
*Absaroka Capital Management, LLC and Kevin Barnes*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| SKYPEOPLE FRUIT JUICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-CV-238F |
| | ) | |
| ABSAROKA CAPITAL MANAGEMENT, | ) | |
| LLC, a Wyoming LLC, KEVIN BARNES, an | ) | |
| individual, and DOES 1 through 10, | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER OF DEFENDANTS ABSAROKA CAPITAL MANAGEMENT, LLC AND KEVIN BARNES TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Absaroka Capital Management, LLC ("Absaroka") and Kevin Barnes

("Barnes") (together with Absaroka, "Defendants" or "Counterclaim Plaintiffs"), by and

through their undersigned counsel, hereby respond to the First Amended Complaint of

Plaintiff SkyPeople Fruit Juice, Inc. ("SkyPeople" or "Plaintiff" or "Counterclaim

1

Defendant'") with the following Answer, Affirmative Defenses and Counterclaim:

## NATURE OF ACTION

1.      In answering the allegations of paragraph 1 of the First Amended

Complaint, Defendants admit that Absaroka published the report entitled "SkyPeople Fruit

Juice, Inc. (NASDAQ: SPU) — Pulp Fiction" (the "Report") written by defendant Barnes,

an equity analyst for Absaroka.  A complete copy thereof is attached as Exhibit 1 to this

Answer and Counterclaim. It is denied that Exhibit A to the First Amended Complaint is a

complete copy of the Report; rather, for example, the Report published electronically by

Absaroka contained hyperlinks embedded in the text that appears on page 5 of the printed

copy of the Report attached as Exhibit A to the First Amended Complaint.  Those

hyperlinks are to the financial information for the year 2009 filed by SkyPeople's three

operating subsidiaries (SkyPeople Juice Group Co., Shaanxi Qiyiwangguo Modern

Organic Agriculture Co., and Huludao Wonder Fruit Co.) (collectively, the "three SPU

subsidiaries") with the local offices of the Chinese State Administration for Industry and

Commerce ("SAIC"); one hyperlink is to an original Chinese language version of the

information and the second hyperlink is to an English language translation of selected

portions of the Chinese language version of the information  (collectively, the "2009 SAIC

Financial Statements").  In Exhibit 1 to this Answer and Counterclaim, the 2009 SAIC

Financial Statements appear after the dividers at the end of the Report; the English and

Chinese versions of the 2009 SAIC Financial Statements are also attached separately as

Exhibits 2 and 3 to this Answer and Counterclaim.  By way of further answer, Exhibit C to

the First Amended Complaint is a print-out of solely the Chinese language version of the

2009 SAIC Financial Statements that were appended to the Report by the hyperlinks.

Defendants deny the remaining allegations of paragraph 1 of the First Amended

Complaint.

      2.     Defendants deny the allegations of paragraph 2 of the First Amended

Complaint.  To the contrary, the Report opines in the executive summary at page 3 of the

Report, and then further explains the factual basis for the opinion in its analysis of

SkyPeople's SAIC and SEC filings on pages 5-6 of the Report, that "SkyPeople's Chinese

SAIC financials indicate that the Company is less than 10% the size claimed in the United

States SEC financials."  The Report also opines in the Executive Summary at page 3, and

then further explains the factual basis for the opinion in its analysis of SkyPeople's margin

analysis and financial metrics on pages 18-22 of the Report, that "EBITDA margins,

inventory turnover, accounts receivables, and selling/marketing costs seem particularly

dubious relative to peers and indicate potential accounting shenanigans."  The Report also

explains, at page 13, that "Contrary to SkyPeople's prior statements in SEC filings that it

'owns the largest kiwifruit plantation in Asia,' Absaroka can find no record of any fruit

plantation owned by SkyPeople."  By way of further answer, Defendants note that

paragraph 25 of the First Amended Complaint, where Plaintiff sets forth the allegedly

fraudulent statements in the Report about which it complains, does not include any

allegations that address either the Report's analysis of SkyPeople's margin analysis and financial metrics on pages 18-22 of the Report or its findings with respect to the kiwifruit plantation on page 13 of the Report.  As to Plaintiff's allegations with respect to Absaroka's analysis of SkyPeople's SAIC and SEC filings, Defendants incorporate the averments of paragraph 25a of the Answer to the First Amended Complaint.

3.     Defendants deny the allegations of paragraph 3 of the First Amended Complaint. Defendants deny that they engaged in any "attack" on Plaintiff.  Defendants further deny that the Report is either baseless or defamatory.  Finally, Defendants deny that their conduct caused any injury to Plaintiff.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 3 of the First Amended Complaint and the same are therefore denied.

4.     Defendants deny the allegations of paragraph 4 of the First Amended Complaint. By way of further answer, Defendants admit that the First Amended Complaint purports to assert claims for (1) libel *per se* under Wyoming common law, (2) libel *per quod* under Wyoming common law, and (3) tortious interference with a contract or prospective economic advantage, but deny that their conduct is illegal or otherwise gives rise to such claims or that the claims have any merit.

## **PARTIES**

5.     Upon information and belief, Defendants admit that Plaintiff is a Florida corporation and that its common stock trades on the NASDAQ National Securities Market

under the symbol SPU.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 5 of the First Amended Complaint and the same are therefore denied.

6.     Defendants admit the allegations of paragraph 6 of the First Amended Complaint.

7.     Defendants admit the allegations of paragraph 7 of the First Amended Complaint.

8.     Defendants admit the allegations of paragraph 8 of the First Amended Complaint.

9.     Defendants deny that they agreed or conspired with anyone to engage in any wrongful conduct with respect to Plaintiff.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 9 of the First Amended Complaint and the same are therefore denied.

## JURISDICTION AND VENUE

10.     Defendants admit that the Plaintiff and Defendants are citizens of different states and that the amount claimed by Plaintiff exceeds $75,000, but Defendants deny that their conduct gives rise to liability in any amount.

11.     Defendants admit that they are citizens of the state of Wyoming and that they are subject to the jurisdiction of this Court.  Defendants deny the remaining allegations of paragraph 11 of the First Amended Complaint. Defendants deny that any of

their statements concerning SkyPeople were false or defamatory.

12.    Defendants deny the allegations of paragraph 12 of the First Amended Complaint.

## FACTUAL ALLEGATIONS

### Background

13.    Defendants admit that SkyPeople's subsidiaries located in the PRC purport to be engaged in the production and sale of fruit juice concentrates, fruit beverages, and other fruit-related products.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegation     s of paragraph 13 of the First Amended Complaint and the same are therefore denied.

14.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 of the First Amended Complaint and the same are therefore denied.

15.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 of the First Amended Complaint and the same are therefore denied.

16.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16 of the First Amended Complaint and the same are therefore denied.

17.    Defendants admit the allegations of paragraph 17 of the First Amended

Complaint.

18.      Defendants deny the allegations of paragraph 18 of the First Amended

Complaint.  Defendant Absaroka admits only that it is a "private investment manager"

which researches, writes, and publishes reports which provide analysis of various publicly

traded companies. These reports set forth both Absaroka's opinions about the companies

that are the subject of the reports and the facts on which those opinions are based.  As set

forth on page 2 of the Report about SkyPeople, "[t]o the best of Absaroka's ability and

belief, all information contained in [Absaroka's reports] is accurate and reliable, and has

been obtained from public sources believed to be accurate and reliable …."

19.      Defendants deny the allegations of paragraph 19 of the First Amended

Complaint. Defendant Absaroka has published both favorable and negative reports

concerning a variety of companies, based upon its analysis of publicly available

information about the fundamentals of the company that is the subject of each report.

Based on its analysis and opinions, whether favorable or negative, Absaroka may take

long or short positions in the company's stock.   Absaroka admits that among the reports

that Absaroka has published externally were reports concerning Chinese companies

SkyPeople, China Shen Zhou Mining & Resources, Yongye International, Inc., and Lihua

International, Inc.

20.      Defendants admit the allegations of paragraph 20 of the First Amended

Complaint, except that Defendants deny the First Amended Complaint's characterization

7

of the reports issued by Absaroka and incorporate paragraph 19 of their Answer to the First Amended Complaint.

21.     Defendants admit that paragraph 21 of the First Amended Complaint partially describes the mechanics of a short transaction, but deny that engaging in a short position with respect to a stock is any more of a "gamble" than the taking of a long position.

22.     Defendants deny the allegations of paragraph 22 of the First Amended Complaint.  By way of further answer, Defendants deny that they issue "fabricated reports" or that they engage in "false and defamatory attacks"; rather, each Absaroka report sets forth Absaroka's opinions concerning the valuation of a company predicated on its analysis of publicly available information about the fundamentals of the company that is the subject of each report.  When Defendants conclude that the market has undervalued a particular company's stock that is the subject of a report, Defendants may take a long position in that company's stock and, if it does, that fact is prominently disclosed in the report itself.  Conversely, when Defendants conclude that the market has overvalued a particular company's stock that is the subject of a report, Defendants may take a short position in that company's stock and, if it does, that fact is prominently disclosed in the report itself.  Defendants deny that the price of any company's stock has "plummeted as a direct result of" their reports, although Defendants acknowledge that the facts and opinions set forth in their reports may lead other investors to evaluate the market's

8

valuation of the companies that are the subject of the reports.  Defendants deny that they

realized "huge profits" with respect to their investment in SkyPeople as of the Plaintiff's

publishing of its press release on July 8, 2011, announcing the commencement of this

lawsuit.

### Defendants' Unsubstantiated Attack on Plaintiff

23.    Defendants admit the allegations of the first sentence of paragraph 23 of the

First Amended Complaint.  By way of further answer, Defendants aver that the complete

Report is hosted in a restricted portion of Absaroka's website and is only available to

members of the equity investment community that received a direct hyperlink to the

Report.  There are no hyperlinks on Absaroka's main website that would allow a member

of the general public (such as SkyPeople's customers, distributors, bankers, and lenders)

to navigate to the Report from Absaroka's homepage.  Defendants deny the allegations of

the second sentence of the paragraph as stated.  By way of further answer, Defendants

aver that Barnes is the author of the Report and that, in writing the Report, as set forth

therein, Barnes relied upon information obtained from a credit management services

company and from investigators in the People's Republic of China who visited

SkyPeople's operating facilities in China as well as various retail stores at which fruit

juices are sold.

24.    Defendants admit that a summary of Absaroka's Report about SkyPeople

appears on the SeekingAlpha website and that articles about the Report appeared on the

StreetInsider.com website and the Financial Network's website.  Defendants also admit

that in addition to the Report's being hosted on a restricted portion of Absaroka's own

website, a copy of the Report was republished by an equity investment community weblog

with the blogger's editorial commentary.  Defendants deny the remaining allegations of

paragraph 24 of the First Amended Complaint.

25.     Defendants deny the allegations of paragraph 25 of the First Amended

Complaint, as set forth more fully in the answers to the allegations of subparagraphs a

through g of the paragraph.

a.     Defendants admit that the following opinion appears in the Executive

Summary on page 3 of the Report:  "SkyPeople's Chinese SAIC financials

indicate that the Company is less than 10% the size claimed in the United

States SEC financials."  In reaching this opinion, as explained on pages 5-6

of the Report, Absaroka relied upon, and reproduced through hyperlinks,

financial information about the three SPU subsidiaries for the year 2009

filed with the local SAIC offices.  Defendants admit that Exhibit C to the

First Amended Complaint contains true and accurate copies of that financial

information, portions of which are translated in Exhibit 3 to this Answer and

Counterclaim.  Defendants deny that the financial information attached as

Exhibit C to the First Amended Complaint was fabricated; to the contrary,

Absaroka procured that financial information from the local SAIC offices

through the offices of Qingdao Inter-Credit Services Pte Co., Ltd. ("Inter-Credit").  For SkyPeople Juice Group Corporation, Inter-Credit provided copies of documents filed by the company with the Xi'an AIC; for Shaanxi Qiyiwangguo Modern Organic Agriculture Co. and Huludao Wonder Fruit Co., Inter-Credit provided print-outs of machine-readable archival data of each company which had been inputted into the computer system by the staff of the Zhouzhi AIC and Suizhong AIC, respectively.  Defendants are without knowledge or information concerning the identity and pedigree of the documents attached to the First Amended Complaint as Exhibit D, but nonetheless Defendants deny that the financial information contained therein was in the documents filed by the three SPU subsidiaries in the local SAIC offices on or before June 1, 2011.  Defendants admit that a side-by-side comparison of Exhibit C and Exhibit D to the First Amended Complaint, whatever the latter's pedigree, demonstrates that those documents "are different in both substance and form," but deny that Exhibit D to the First Amended Complaint contains the "true SAIC statements" as alleged in the last sentence of paragraph 25a of the First Amended Complaint and deny further that Defendants made false or defamatory remarks about SkyPeople. Defendants deny the remaining allegations of paragraph 25a of the First Amended Complaint.

b.   Defendants admit that the following opinion appears in the heading on page 7 of the Report:  "SkyPeople's Limited Actual Operations – Significantly smaller than claimed in SEC filings."  Defendants also admit that the second and third sentences of paragraph 25b of the First Amended Complaint accurately quote sentences found on pages 8 and 10 of the Report. Defendants deny that the fourth sentence of paragraph 25b of the First Amended Complaint accurately summarizes either Absaroka's opinions concerning the production periods at the operating plants or the facts on which those opinions are based as set forth on pages 7 through 12 of the Report; and Defendants further deny that the Report's statements concerning the duration of operations at SkyPeople's production facilities are false. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of the last three sentences of paragraph 25b of the First Amended Complaint and the same are therefore denied. Defendants deny the remaining allegations of paragraph 25b of the First Amended Complaint.

c.   Defendants admit that the following opinion appears in the Executive Summary on page 3 of the Report:  "Retail channel checks and discussions with SkyPeople's distributors and customers make the company's claims regarding product distribution and sales volume unbelievable.  Many of the

Company's 'customers' claim to have done little or no business with the

Company and Absaroka's researchers struggled to find the company's

beverage products on store shelves." Defendants deny that the first sentence

of paragraph 25c of the First Amended Complaint accurately summarizes

either Absaroka's opinions concerning the availability of SkyPeople's

products or the facts on which those opinions are based as set forth on pages

13 through 17 of the Report; and Defendants further deny that the Report's

statements concerning the availability of SkyPeople's products are false.

Defendants are without knowledge or information sufficient to form a belief

as to the truth of the last three sentences of paragraph 25c of the First

Amended Complaint and the same are therefore denied. Defendants deny

the remaining allegations of paragraph 25c of the First Amended Complaint.

d. Defendants deny that the Report states that "certain of SkyPeople's

production facilities operate with old equipment." Defendants admit that the

second sentence of paragraph 25d accurately quotes a selected part of a

sentence that appears on page 8 of the Report concerning the Jingyang

Production Facility. Defendants are without knowledge or information

sufficient to form a belief as to the truth of the last sentence of paragraph

25d of the First Amended Complaint and the same are therefore denied.

Defendants deny the remaining allegations of paragraph 25d of the First

Amended Complaint.

e.     Defendants admit that the following opinion, together with the facts on which the opinion is based, appear on page 8 of the Report concerning the Jingyang operating facility:  "Although production at Jingyang had ended in December, three months prior to the site visit, the facility was filthy and unkempt.  Absaroka's in-country investigator noted that the smell of decomposing pears permeated the entire plant and the equipment was dusty, overflowing with partially processed peels, and pear pulp was piled on the floor to rot.  Based on the unsanitary condition of the plant, it is difficult to believe any foreign juice companies or distributors would be interested in sourcing concentrates from SkyPeople."  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of the last two sentences of paragraph 25e of the First Amended Complaint and the same are therefore denied.  Defendants deny the remaining allegations of paragraph 25e of the First Amended Complaint.

f.     Defendants admit that the following sentence appears on page 8 of the Report concerning a March 9, 2011, plant tour for investors led by Rodman & Renshaw:  "Jingyang staff told Absaroka's in-country investigator that the plant was not actually in production during the investor tour.  Instead, the seasonal production workers were called into work to appear as if they

14

were busily involved in production and had to wear special outfits for the day."  Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments of the last sentence of paragraph 25f of the First Amended Complaint and the same are therefore denied. Defendants deny the remaining allegations of paragraph 25f of the First Amended Complaint.

g.      Defendants admit that the following opinion appears in the Executive Summary on page 3 of the Report:  "A history of low-quality auditors raises significant concerns about validity of published financials and future business prospects."  The facts on which that opinion is based (including deficiencies in the audits performed by BDO Limited (Hong Kong) for other corporations) are set forth on pages 23 through 24 of the Report. Defendants deny that the first sentence of paragraph 25g of the First Amended Complaint accurately summarizes either Absaroka's opinions concerning the role of SkyPeople's auditors or the facts on which those opinions are based as set forth on pages 23 through 24 of the Report. Defendants are without knowledge or information sufficient to form a belief as to the truth of the last two sentences of paragraph 25g of the First Amended Complaint and the same are therefore denied.  Defendants deny the remaining allegations of paragraph 25g of the First Amended Complaint.

26.     Defendants deny the allegations of paragraph 23 of the First Amended Complaint.  As demonstrated by the averments of Defendants' answer to paragraph 25, which are incorporated herein by reference, the factual assertions set forth in the Report are predicated on publicly available information about the company which has been accurately and truthfully set forth.  By way of further answer, Defendants deny that their conduct has caused any injury to Plaintiff.

27.     Defendants admit that Qingdao Inter-Credit Services Pte Co. Ltd. ("Inter-Credit") provided Defendants with copies of the three SPU subsidiaries' financial information filed with their local SAIC offices.  Defendants deny the remaining allegations of paragraph 27 of the First Amended Complaint.

28.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 28 of the First Amended Complaint that there are "many companies in the PRC in the business of procuring and/or producing falsified financial statements of companies incorporated in the PRC" and the same are therefore denied.  Defendants deny that Inter-Credit is such a company.  To the contrary, Inter-Credit is an ISO 9001 quality certified global credit management services company that provides a suite of corporate services similar to Dun & Bradstreet in the United States.  Inter-Credit is also a member of the TCM Group, a global debt collection and credit management consortium in over 150 countries.

29.     Defendants deny the allegations of paragraph 29 of the First Amended

Complaint.  By way of further answer, Defendants incorporate paragraph 28 of their

Answer to the First Amended Complaint.

30.     Defendants deny the allegations of paragraph 30 of the First Amended

Complaint.

31.     Defendants deny the allegations of paragraph 31 of the First Amended

Complaint.

32.     Defendants deny the allegations of paragraph 32 of the First Amended

Complaint.

33.     In answering paragraph 33 of the First Amended Complaint, Defendants

admit that on May 31, 2011, the Plaintiff's stock closed at $2.55 per share.  Defendants

deny that their Report was defamatory.  By way of further answer, Defendants aver that

during the months before the issuance of the Report, the price of SkyPeople's stock had

declined from $4.41 on March 31, 2011, to $2.55 on May 31, 2011, a precipitous decline

of approximately 42% of shareholder value in 42 trading days.  Upon information and

belief, this decline in the stock was attributable to the market's re-evaluation of

SkyPeople's value following the disclosure of previously undisclosed significant related-

party transactions, as well as to the downgrading of SkyPeople's stock by an analyst at

Roth Capital Partners LLC, which had previously served as underwriter on SkyPeople's

secondary equity offerings.

34.     In answering paragraph 34 of the First Amended Complaint, Defendants

admit that on June 1, 2011, the plaintiff's stock closed at $2.08 per share, and that this was an 18% decline in the closing price of the Plaintiff's securities. Defendants deny that their Report is in any way defamatory. By way of further answer, Defendants deny that their conduct has caused any injury to Plaintiff.

35.     Defendants deny the allegations of paragraph 35 of the First Amended Complaint, except that Defendants admit that Absaroka realized negligible cash earnings from their investment in SkyPeople as of the Plaintiff's publishing of its press release on July 8, 2011, announcing the commencement of this lawsuit. Defendants deny that the "precipitous decline in the Plaintiff's stock price" was caused by their actions. The 42% share price decline between March 31, 2011, and May 31, 2011, indicates that before the publication of the Report investors were already independently re-evaluating SkyPeople.

36.     Defendants deny the allegations of paragraph 36 of the First Amended Complaint and specifically deny that they engaged in any wrongful conduct, either individually or in concert with others. Defendants further deny that their conduct has caused any injury to Plaintiff.

37.     Defendants admit that on June 10, 2011, the Plaintiff's counsel sent a letter to Defendants requesting that Defendants withdraw the Report and issue a retraction through a press release. Defendants deny that the Report contains any false or defamatory statements and deny the remaining allegations of paragraph 37 not specifically admitted herein.

18

38.     Defendants admit the allegations of paragraph 38 of the First Amended Complaint.

## FIRST CAUSE OF ACTION

### Libel *Per Se*

39.     Defendants incorporate by reference as if fully set forth herein each and every averment set forth in paragraphs 1 through 38 of their Answer to the First Amended Complaint.

40.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40 of the First Amended Complaint and the same are therefore denied.

41.     Defendants deny the allegations of paragraph 41 of the First Amended Complaint.

42.     Defendants deny the allegations of paragraph 42 of the First Amended Complaint.

43.     Defendants deny the allegations of paragraph 43 of the First Amended Complaint.

44.     Defendants deny the allegations of paragraph 44 of the First Amended Complaint.

45.     Defendants deny the allegations of paragraph 45 of the First Amended Complaint.

46.     Defendants deny the allegations of paragraph 46 of the First Amended Complaint.

47.     Defendants deny the allegations of paragraph 47 of the First Amended Complaint.

48.     Defendants deny the allegations of paragraph 48 of the First Amended Complaint.

49.     Defendants deny the allegations of paragraph 49 of the First Amended Complaint.

50.     Defendants deny the allegations of paragraph 50 of the First Amended Complaint.

51.     Defendants deny the allegations of paragraph 51 of the First Amended Complaint.

52.     Defendants deny the allegations of paragraph 52 of the First Amended Complaint.

53.     Defendants deny the allegations of paragraph 53 of the First Amended Complaint.

## SECOND CAUSE OF ACTION

### Libel *Per Quod*

54.     Defendants incorporate by reference as if fully set forth herein each and every averment of paragraphs 1 through 38 of their Answer to the First Amended

Complaint.

55.     Defendants deny the allegations of paragraph 55 of the First Amended Complaint.

56.     Defendants deny the allegations of paragraph 56 of the First Amended Complaint.

57.     Defendants deny the allegations of paragraph 57 of the First Amended Complaint.

58.     Defendants deny the allegations of paragraph 58 of the First Amended Complaint.

59.     Defendants deny the allegations of paragraph 59 of the First Amended Complaint.

60.     Defendants deny the allegations of paragraph 60 of the First Amended Complaint.

61.     Defendants deny the allegations of paragraph 61 of the First Amended Complaint.

62.     Defendants deny the allegations of paragraph 62 of the First Amended Complaint.

63.     Defendants deny the allegations of paragraph 63 of the First Amended Complaint.

64.     Defendants deny the allegations of paragraph 64 of the First Amended

Complaint.

65.     Defendants deny the allegations of paragraph 65 of the First Amended Complaint.

## THIRD CAUSE OF ACTION

### Tortious Interference With a Contract or Prospective Economic Advantage

66.     Defendants incorporate by reference as if fully set forth herein each and every averment of paragraphs 1 through 38 of their Answer to the First Amended Complaint.

67.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 67 of the First Amended Complaint and the same are therefore denied.

68.     Defendants deny the allegations of paragraph 68 of the First Amended Complaint.

69.     Defendants deny the allegations of paragraph 69 of the First Amended Complaint.

70.     Defendants deny the allegations of paragraph 70 of the First Amended Complaint.

71.     Defendants deny the allegations of paragraph 71 of the First Amended Complaint.

72.     Defendants deny the allegations of paragraph 72 of the First Amended

Complaint.

73.     Defendants deny the allegations of paragraph 73 of the First Amended

Complaint and deny each and every other allegation of the First Amended Complaint not

specifically admitted by Defendants.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

74.     The First Amended Complaint fails to state a claim upon which relief can be

granted.

### SECOND DEFENSE

75.     Defendants have not engaged in any defamatory, libelous, or otherwise

tortious conduct.

### THIRD DEFENSE

76.     Plaintiff's First Amended Complaint fails to state a cause of action for libel

because any factual statements made by Defendants about which Plaintiff complains are

substantially true.

### FOURTH DEFENSE

77.     Plaintiff's First Amended Complaint fails to state a cause of action for libel

because Defendants' statements about which Plaintiff complains are statements of

opinion.

## FIFTH DEFENSE

78.     Defendants did not act with the state of mind necessary to give rise to a claim for libel or interference with prospective economic advantage.

## SIXTH DEFENSE

79.     Defendants deny that Plaintiff was in any way injured or damaged by any conduct of Defendants.

## SEVENTH DEFENSE

80.     Any fluctuations in the price of Plaintiff's stock attributable to misinformation in the market were caused by the misrepresentations of Plaintiff.

## EIGHTH DEFENSE

81.     Any decline in the value of Plaintiff's stock since June 1, 2011, as alleged in the First Amended Complaint, was caused by events other than the conduct of Defendants.

## NINTH DEFENSE

82.     Any difficulties encountered by SkyPeople in obtaining financing of Plaintiff's stock since June 1, 2011, as alleged in the First Amended Complaint, were caused by events other than the conduct of Defendants.

### TENTH DEFENSE

83.     Any difficulties encountered by SkyPeople with its existing and/or expected business relationships, as alleged in the First Amended Complaint, were caused by events other than the conduct of Defendants.

### ELEVENTH DEFENSE

84.     Any change in SkyPeople's relationships with its customers, distributors, bankers, lenders, institutional investors and the media, as alleged in the First Amended Complaint, was caused by events other than the conduct of Defendants.

### TWELFTH DEFENSE

85.     Any loss of investment or operating capital by SkyPeople, as alleged in the First Amended Complaint, was caused by events other than the conduct of Defendants.

### THIRTEENTH DEFENSE

86.     Any loss of SkyPeople's product sales and profits, as alleged in the First Amended Complaint, was caused by events other than the conduct of Defendants.

### FOURTEENTH DEFENSE

87.     Plaintiff's damages resulted from the actions of its own representatives and/or other persons or entities over whom Defendants exercised no control.

**FIFTEENTH DEFENSE**

88.     The alleged misstatements that form the basis of Plaintiff's libel claims are not actionable as libel *per se* and Plaintiff fails properly to plead the causation of special damages.  Accordingly, Plaintiff's First Amended Complaint fails to state a cause of action for libel.

**SIXTEENTH DEFENSE**

89.     The alleged misstatements that  form the basis of Plaintiff's libel claim, even if made, are subject to the qualified privilege for information exchanged between market professionals with a common interest.  Plaintiff has failed to plead facts sufficient to overcome the qualified privilege.  Accordingly, plaintiff's First Amended Complaint fails to state a cause of action for libel.

**SEVENTEENTH DEFENSE**

90.     Plaintiff's claim for tortious interference with prospective economic advantage fails to state a claim upon which relief can be granted because Plaintiff does not allege that Defendants took any action directed toward third parties with whom Plaintiff intended to do business.

**EIGHTEENTH DEFENSE**

91.     Plaintiff's claim for tortious interference with prospective economic advantage fails to state a claim upon which relief can be granted because Plaintiff does not

properly allege that it had a reasonable expectancy of entering into those business

relationships absent Defendants' alleged misconduct.

## NINETEENTH DEFENSE

92.     Plaintiff's First Amended Complaint fails to meet the requirements of

Federal Rule of Civil Procedure 9(b) for failure to identify with specificity the time, place,

and content of the alleged misrepresentations by which Defendants allegedly libeled

Plaintiff.  Accordingly, plaintiff's First Amended Complaint fails to state a claim either for

libel *per se* or libel *per quod*.

## TWENTIETH DEFENSE

93.     Plaintiff's First Amended Complaint fails to meet the requirements of

Federal Rule of Civil Procedure 9(b) for failure to identify with specificity the time, place,

and content of the alleged misrepresentations by which Defendants allegedly tortiously

interfered with plaintiff's alleged prospective economic advantages.  Accordingly,

plaintiff's First Amended Complaint fails to state a claim for tortious interference with

prospective economic advantages.

## TWENTY-FIRST DEFENSE

94.     Plaintiff's First Amended Complaint is barred by the equitable doctrine of

unclean hands.

**TWENTY-SECOND DEFENSE**

95.     Plaintiff's claimed damages, if any, are too remote, speculative, or uncertain to recover.

**TWENTY-THIRD DEFENSE**

96.     Plaintiff's claim is barred by equitable estoppel.

**TWENTY-FOURTH DEFENSE**

97.     Defendants hereby give notice that they intend to rely upon such other and further affirmative defenses as may become available during this action, and thereby do not waive their right to assert supplemental affirmative defenses which may arise as a result of the discovery process.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants respectfully request that judgment be entered in their favor and against plaintiff, together with costs, attorneys' fees and all other relief the Court deems appropriate.

**COUNTERCLAIMS OF ABSAROKA CAPITAL MANAGEMENT, LLC
AND KEVIN BARNES AGAINST
PLAINTIFF SKYPEOPLE FRUIT JUICE, INC.**

Defendants/Counterclaim Plaintiffs Absaroka Capital Management, LLC, and Kevin Barnes, by their attorneys, allege the following on information and belief, except as to those allegations which relate to Defendants/Counterclaim Plaintiffs, which are based on personal knowledge.  Counterclaim Plaintiffs' information and belief is based upon, inter alia, a review of public statements made by Plaintiff/Counterclaim Defendant SkyPeople Fruit Juice, Inc., news articles, press releases, analysts' reports, and SkyPeople's own public filings in both the United States and the People's Republic of China.

## The Parties

98.     Counterclaim Plaintiff Absaroka Capital Management, LLC is a limited liability company organized under the laws of the state of Wyoming, with its principal place of business in Cheyenne, Wyoming.  It is primarily engaged in the business of private investment management.

99.     Counterclaim Plaintiff Kevin Barnes is a citizen of the State of Wyoming.  He is Absaroka's equity analyst and an experienced global investor with an unblemished regulatory, legal, and ethical track-record.  Barnes has completed investment due diligence on a global basis.  Barnes previously was a FINRA Series 7 and Series 63 Registered Representative in the Global Natural Resources Investment Banking Group of JPMorgan Chase & Co.

100.     As alleged by the Plaintiff in paragraph 5 of its First Amended Complaint,

Counterclaim Defendant SkyPeople Fruit Juice, Inc. ("SkyPeople"), is a Florida corporation with its principal place of business in Xi'an, People's Republic of China ("PRC").  As alleged by the Plaintiff in paragraph 13 of its First Amended Complaint, SkyPeople, through its subsidiaries located in the PRC, purports to be engaged in the production and sale of fruit juice concentrates, fruit beverages, and other fruit-related products.

101.    SkyPeople became a publicly traded company in the United States in February 2008 via a reverse-merger transaction with a U.S. listed OTC-BB shell. SkyPeople's use of a reverse merger transaction enabled SkyPeople to "go public" without the due diligence scrutiny that normally accompanies an initial public offering in the United States.

102.    At the time that the incidents described in this Counterclaim occurred, SkyPeople had approximately 25.7 million shares of its common stock outstanding.  At all times relevant, SkyPeople's common stock was actively traded on the NASDAQ National Securities Market under the symbol "SPU" in an efficient and liquid market.

103.    SkyPeople files annual, quarterly, and other reports with the United States Securities and Exchange Commission ("SEC") in accordance with the Securities Exchange Act of 1934.

## Jurisdiction and Venue

104.    This Court has jurisdiction over the subject matter of these counterclaims

pursuant to 28 U.S.C.A. § 1332 because the counterclaim plaintiffs are citizens of Wyoming,

the counterclaim defendant is a citizen of Florida, and the amount in controversy exceeds

$75,000, exclusive of interest and costs.

105.    This Court also has jurisdiction over these counterclaims pursuant to principles

of supplemental jurisdiction, 28 U.S.C.A. § 1367.

106.    Pursuant to Federal Rule of Civil Procedure 13(a), these counterclaims are

asserted as compulsory counterclaims.

107.    Venue is proper in this Court pursuant to 28 U.S.C.A. § 1391(a) because a

substantial portion of the events or omissions giving rise to these counterclaims occurred in this

judicial district.

## Factual Background

108.    Counterclaim Plaintiffs are involved in securities investment, and generally

participate in the public equity markets by utilizing a "long/short" investment strategy,

which is employed by a wide variety of pension funds, university endowments and family

offices to provide adequate risk-adjusted returns to their stakeholders.  A "long/short"

equity investment strategy involves purchasing securities the manager believes to be

undervalued (a "long" investment) and short selling securities that the manager believes to

be overvalued (a "short" investment).

109.    "Short selling" is a securities investment practice in which investors, in an

attempt to benefit from a company's decreasing security value, borrow and sell a

company's securities, with the intention of buying them back in the future for a lower

price.  The short seller is said to be in a "short position" until they purchase securities to

"cover" or replace the borrowed securities.  Short-selling is both a beneficial and well-

established mechanism in the United States public equity markets.

110.    Among the securities in which Absaroka invested was the common stock of

SkyPeople.  Absaroka's transactions included short sales and selected covering purchases of

SkyPeople stock.

111.    As part of its detailed due-diligence process for potential investment

opportunities, Absaroka completes extensive investigations of publicly traded companies to

assist in the development of an investment thesis.

112.    As is common within the United States equity investment community,

Absaroka shares selected examples of its equity research due diligence findings within the

investment community to test its hypotheses and refine its investment logic.  Such public

conversations are in the community interest of public equity markets because they

increase information transparency; allow for the free exchange of divergent perspectives

and opinions; and increase the efficiency of the price-discovery process for securities.

Such free exchange of divergent perspectives and opinions is a hallmark of the United

States capital markets.

113.    The reports that constitute the work product of Counterclaim Plaintiffs'

investment due diligence work are well respected within the equity investment community and have been cited in a variety of top-tier financial publications, including, but not limited to, Barron's, Bloomberg, BusinessWeek, The Financial Times, and the Wall Street Journal.

114.    Counterclaim Plaintiffs have provided information to the SEC in connection with investigations of potential violations of United States securities laws by Chinese reverse merger companies.

## Counterclaim Defendant's Conduct

115.    On March 31, 2010, SkyPeople filed its annual Report for the year ending December 31, 2009, on Form 10-K (the "2009 Form 10-K").

116.    The 2009 Form 10-K included SkyPeople's consolidated balance sheet as of December 31, 2009, and the related consolidated statements of operations and comprehensive income, stockholders' equity and cash flows for the year then ended.

117.    Under the heading Risk Factors in the 2009 Form 10-K (page 18), SkyPeople disclosed a related party transaction with Shaanxi Hede Investment Management Co., Ltd., a company owned by two members of SkyPeople's Board.

118.    Other than the transaction referenced in paragraph 117, neither the Form 10-K nor SkyPeople's audited financial statements contained therein disclosed any other related party transactions.

119.    On August 16, 2010, SkyPeople filed its Registration Statement with the SEC on Form S-1/A (the "Registration Statement").  The Registration Statement was

declared effective by the SEC on August 24, 2010.

120.    The Registration Statement discussed SkyPeople's acquisition of Yingkou Trusty Fruits Co., Ltd. ("Yingkou") on November 25, 2009.

121.    The Registration Statement also stated that "[t]here has not been any reportable transaction between us and a related person since January 1, 2009."

122.    In the Registration Statement, SkyPeople incorporated its financial statements for the years ended December 31, 2008 and 2009 and for the six months ended June 30, 2010.

123.    On August 26, 2010, SkyPeople issued a Prospectus in connection with the secondary offering. The Prospectus reiterated much of the Registration Statement's disclosures relating to SkyPeople's production, sales volume, and revenues.

124.    On April 1, 2011, SkyPeople issued its annual report for the year ending December 31, 2010, on Form 10-K (the "2010 Form 10-K").

125.    In the 2010 Form 10-K, SkyPeople disclosed that, in connection with the acquisition of Yingkou Trusty Fruits Co., Ltd., SkyPeople had engaged in a previously undisclosed related party transaction.

126.    Later that same day – that is, on April 1, 2011 – Roth Capital Partners LLC, an underwriter on SkyPeople's secondary equity issuances, cut its price target on SkyPeople's stock from $13 per share to $4 per share, citing concerns about related party transactions.  Moreover, on August 22, 2011, Roth Capital Partners LLC announced it was

terminating equity research coverage of SkyPeople's stock.  In general, an underwriter of a company's equity offering will only terminate equity research coverage if the underwriter believes it is no longer in the best interest of its institutional investor clients to consider an investment in the company.

127.    SkyPeople's stock closed at $4.41 per share on March 31, 2011. On Friday, April 1, 2011, it closed at $3.85 per share. On the next trading day, Monday, April 4, 2011, it closed at $3.57 per share, an approximately 19% cumulative decrease since the revelation of the previously undisclosed related party transaction.

128.    Before the revelation of the previously undisclosed related party transaction, Counterclaim Plaintiffs were aware of the widespread fraud involving Chinese companies who had entered the equity market in the United States through a reverse merger, including such companies as Rino International, Duoyuan Printing, and China Education Alliance.

129.    Based on research of public SEC filings, Counterclaim Plaintiffs became aware of SkyPeople's China business operations, reverse merger history, and NASDAQ listing and decided to undertake an investigation of SkyPeople as a potential investment opportunity.

130.    As part of its investigation of SkyPeople as a potential investment opportunity, Counterclaim Plaintiffs undertook to obtain the financial information filed annually by SkyPeople's three operating subsidiaries with their respective local offices of the Chinese

State Administration for Industry and Commerce ("SAIC").

131.    Because annual financial information is not due to be filed with the SAIC until June 30th of the year following the end of the year covered by the financial information, Counterclaim Plaintiffs sought to obtain the information filed by SkyPeople's three operating subsidiaries for the year ending December 31, 2009.

132.    The financial information of SkyPeople Juice Group Corporation was to be recorded with the Xi'an County Administration for Industry and Commerce in Shaanxi Province ("Xi'an AIC");  the financial information of Shaanxi Qiyiwangguo Modern Organic Agriculture Co. in the Zhouzhi County Administration for Industry in Shaanxi Province ("Zhouzhi AIC"); and the financial information of Huludao Wonder Fruit Co. in the Suizhong County Administration for Industry and Commerce in Liaoning Province ("Suizhong AIC").

133.    Through the offices of Qingdao Inter-Credit Services Pte Co., Ltd. ("Inter-Credit"), Counterclaim Plaintiffs obtained information of SkyPeople's three operating subsidiaries for the year ending December 31, 2009, on file with their respective SAIC offices.  Inter-Credit is an ISO 9001 quality certified global credit management services company that provides a suite of corporate services similar to Dun & Bradstreet in the United States.  Inter-Credit is also a member of the TCM Group, a global debt collection and credit management consortium in over 150 countries.  For SkyPeople Juice Group Corporation, Inter-Credit provided copies of documents on file with the Xi'an AIC; for

Shaanxi Qiyiwangguo Modern Organic Agriculture Co. and Huludao Wonder Fruit Co.,

Inter-Credit provided print-outs of machine-readable archival data of each company which

had been inputted into the computer system by the staffs of the Zhouzhi AIC and

Suizhong AIC respectively.

134.    Because a simple summation of the key financial indicators indicated a

significant difference between the information about SkyPeople's subsidiaries retrieved

from their respective SAIC offices by Inter-Credit and the information reported by

SkyPeople in its SEC filings, the Counterclaim Plaintiffs decided to pursue a further

investigation into SkyPeople's business operations to develop an investment thesis.

135.    In March 2011, a private investigation firm was retained to coordinate

research in the PRC of SkyPeople's business operations.  Specifically, the private

investigation firm was instructed to:

       a.      Visit each of SkyPeople's production facilities to investigate

               production activity, existing infrastructure, and market color;

       b.      Visit SkyPeople's purported retail distribution channels to ascertain

               product placement, sales velocities, and market color;

       c.      Attempt to verify SkyPeople's claim that it owned the largest

               kiwifruit plantation in Asia;

       d.      Investigate the legality of SkyPeople's issuance of public equity in

               Xi'an, PRC, in 2005; and

e.  Investigate comparable juice businesses within the PRC.

136.  Over the next two months, the private investigation firm's researchers in the PRC completed a detailed investigation of SkyPeople's business operations.

137.  On April 1, 2011, SkyPeople filed its 2010 Form 10-K, which, as alleged above, provided information on previously undisclosed related party transactions.  This revelation further motivated Counterclaim Plaintiffs to continue their due diligence into SkyPeople.

138.  In April 2011, Counterclaim Plaintiffs began to review in detail the performance history of SkyPeople's audit firms.  In addition, in April 2011, Counterclaim Plaintiffs began to perform a detailed financial analysis of SkyPeople's operations relative to comparable peers.

139.  Counterclaim Plaintiffs completed a detailed review of all of SkyPeople's historical public filings with the SEC, including the 8-K filed May 16, 2008, which claimed SkyPeople "owns the largest kiwifruit plantation in Asia."

140.  Based on Counterclaim Plaintiffs' knowledge of the sector, research completed by its in-country researchers, and SkyPeople's financial information filed with the SEC and the SAIC, Counterclaim Plaintiffs developed the opinion that SkyPeople had materially misrepresented its production volume, revenue, capital equipment, and profitability.

141.  In particular, Counterclaim Plaintiffs concluded, inter alia, that:

a.     SkyPeople's SAIC financial information indicates that SkyPeople is less than 10% the size claimed in the United State SEC financials;

b.     SkyPeople's claim that it owned the largest kiwifruit plantation in Asia was false; and

c.     Certain key financial indicators as reported by SkyPeople – such as EBITDA margins, inventory turnover, accounts receivable, and selling/marketing costs -- were questionable in light of comparable information reported by other fruit juice companies.

142.     On June 1, 2011, Counterclaim Plaintiffs electronically published a report entitled, "SkyPeople Fruit Juice, Inc. (NASDAQ: SPU) - Pulp Fiction" (the "Report"). A copy of the Report is attached as Exhibit 1 to this Answer and Counterclaim. Absaroka published the Report electronically with hyperlinks, including hyperlinks embedded in the text that appears on page 5 of the copy of the Report attached as Exhibit 1 to this Answer and Counterclaim. Those hyperlinks are to the financial information for the year 2009 for SkyPeople's three operating subsidiaries on file with their respective local SAIC offices in an original Chinese language version (Exhibit 2 to this Answer and Counterclaim) and in an English language version that translates selected portions of the Chinese language version (Exhibit 3 to this Answer and Counterclaim). In Exhibit 1 to this Answer and Counterclaim, the SAIC financial information appears after the dividers at the end of the Report.

143.     At its outset, in the first sentence of the "Executive Summary" on page 3 of the Report, written by Counterclaim Plaintiff Barnes for Counterclaim Plaintiff Absaroka, the Report discloses that Absaroka holds a "short" position in SkyPeople's common shares. In addition, on page 2 of the Report under the "Legal Information and Disclaimers" section, supplemental information regarding Counterclaim Plaintiff's trading positions is discussed.

144.     In the "Executive Summary" section on page 3, the Report sets forth the opinion that "SkyPeople Fruit Juice, Inc. (NASDAQ: SPU) has materially misrepresented its production volume, revenue, and profitability. SkyPeople's management has been focused on stock promotion and SPU appears overvalued by the market at this time."

145.     In explaining the basis of this opinion, the Report states that "SkyPeople's Chinese SAIC financials indicate SkyPeople is less than 10% the size claimed in the United States SEC financials" and "Absaroka can find no record of any fruit plantation owned by SkyPeople."

146.     In particular, the Report states:

**1. SkyPeople's SAIC vs. SEC Financials -** *Significant delta indicates SPU has massively overstated its financials and size of its business*

SkyPeople's financial statements filed in China are not in any way similar to its SEC financial statements and indicate the actual business is substantially smaller than claimed. These local financial statements, which SPU must file with the Xi' an branch of the State Administration for Industry and Commerce ("SAIC"), show that the Company generated revenue of less than $5.3mm in

FY09.   This corroborates Absaroka's belief that SPU's fraudulently misrepresenting its business in its United States Securities and Exchange Commission filings.

Absaroka believes that the company is providing accurate financial statements to its own government, but is providing fraudulent numbers to U.S. investors and the U.S. Securities and Exchange Commission.   2009 was the most recent year that Company's SAIC financials were publicly available as of Absaroka's last inquiry on May 30, 2011.
….

147.    In addition, the Report further states:

3. **SkyPeople Does Not Own the Largest Kiwifruit Plantation in Asia** – *Forced to purchase input fruits at high prices from local farmers*
Contrary to SkyPeople's prior statements in SEC filings that it "owns the largest kiwifruit plantation in Asia," Absaroka can find no record of any fruit plantation owned by SkyPeople. SkyPeople's financial statements do not include any indication the Company owns such an asset or finances the carrying costs associated with a large kiwifruit plantation.
In addition, local farmers in Shaanxi and Liaoning stated SkyPeople is forced to buy fruit from local distributors at prices higher than larger competitors because of the Company's small production volume.   Finally, farmers in Liaoning claimed that SkyPeople often delays payment to local farmers, making them reluctant to do business with SkyPeople.

148.    Following the publication of the Report on June 1, 2011, SkyPeople's stock closed at $2.08 per share on June 1, 2011, down 19% from the prior day's closing price.

149.    Following the publication of the Report, SkyPeople commenced a campaign to destroy the reputation of Absaroka as an investment manager and Barnes as an analyst.

150.    SkyPeople's campaign against Absaroka and Barnes was motivated by

SkyPeople's desire to discredit the statements in the Report that SkyPeople had fraudulently misrepresented its business in its filings with the SEC.

151.     SkyPeople undertook its campaign against Absaroka and Barnes even though SkyPeople knew that the financial information on which the Report relied was substantively the same as the information of the three SPU operating subsidiaries on file with their respective SAIC offices and that the company did not own the largest kiwifruit plantation in Asia.

152.     As part of its campaign against Absaroka and Barnes, on June 2, 2011, SkyPeople issued a press release in which SkyPeople accused Absaroka of including in the Report "fake reports entirely fabricated" containing "false information."  Specifically, the June 2, 2011, press release stated the following with respect to the Report:

> i)   SkyPeople has learned that, on June 1, 2011, an entity identified itself as "Absaroka Capital Management" (the "Author") and a short seller of SkyPeople's securities, published an article on an investor website making various allegations and accusations against SkyPeople (the "Article"). SkyPeople believes that the Article contains many materially false and inaccurate claims, including without limitation, claims relating to SkyPeople's operations, retail and sales channels, production, financials, and industry performance.
>
> ii)  In particular, it appears that the Author based much of its assumptions, analysis and conclusions in the Article on information and Reports allegedly to have been filed by SkyPeople with the PRC State Administration of Industry and Commerce ("SAIC"). However, upon review of the reports contained in the Article that the Author alleges to have been filed by SkyPeople with SAIC, it appears that such so-called SAIC reports are fake reports entirely fabricated and contain materially false information about

SkyPeople's financial conditions and results of
operations. The "auditor" of the so-called SAIC Reports
contained in the Article as shown on its company stamp did
not appear to be the same auditor that actually audited the
financial statements of SkyPeople's PRC subsidiaries.

On June 3, 2011, SkyPeople filed an 8-K public filing with the SEC (the "SkyPeople 8-
K"), which contained a copy of the June 2, 2011, press release.  A copy of the SkyPeople
8-K, including the June 2, 2011, press release, is attached as Exhibit 4 to this Answer and
Counterclaim.

153.    When it issued the June 2, 2011, press release, and filed the 8-K containing
that press release, SkyPeople was aware that the financial information of SkyPeople's
three operating subsidiaries upon which Absaroka relied in its Report was not fabricated
and, in fact, was consistent with the financial information of SkyPeople's operating
subsidiaries for the year ending December 31, 2009, on file with the local SAIC offices.

154.    On July 7, 2011, SkyPeople filed its Complaint for defamation and tortious
interference against Absaroka and Barnes.  In that Complaint, SkyPeople falsely alleges
that the 2009 financial information of SkyPeople's three operating subsidiaries upon
which Absaroka relied in its Report was false and fabricated.

155.    On October 31, 2011, SkyPeople filed its First Amended Complaint for
defamation and tortious interference against Absaroka and Barnes.  In that First Amended
Complaint, SkyPeople falsely alleges that the 2009 financial information of SkyPeople's
three operating subsidiaries upon which Absaroka relied in its Report was falsely

produced and fabricated.

156.     At the time of the filing of the Complaint and the First Amended Complaint, SkyPeople knew that the financial information contained in the Report accurately reflected the financial information of SkyPeople's operating subsidiaries for the year ending December 31, 2009, on file with the local SAIC offices.

157.     Contrary to the allegations of SkyPeople's June 2 press release, the financial information of SkyPeople's three operating subsidiaries upon which Absaroka relied in its Report and which were reproduced through hyperlinks to the electronic version of the Report, were not fabricated; to the contrary, the information accurately reflected the financial information of SkyPeople's operating subsidiaries for the year ending December 31, 2009, on file with the local SAIC offices.

158.     The fact that the financial information upon which Absaroka relied in its Report indeed accurately reflected the financial information of SkyPeople's operating subsidiaries for the year ending December 31, 2009, filed with the local SAIC offices is demonstrated by the fact that, as set forth more fully in paragraphs 159 to 169 hereof, Absaroka on three separate occasions sought copies of those operating subsidiaries' financial information for the year ended December 31, 2009, as filed with the respective SAIC. Each time, Absaroka received the same financial information or other information that is consistent with the information relied upon.

159.     As averred above, during its due diligence investigation, Absaroka procured

44

financial information of SkyPeople's operating subsidiaries for the year ending December 31, 2009, through the offices of Inter-Credit.

160.    After receipt from SkyPeople's counsel of the demand for retraction of the Report because of the alleged fabrication of the SAIC Financial Statements on which Absaroka relied, Absaroka confirmed the authenticity of the financial information on which it had relied by engaging a second credit management services company, Wintrust Information Service Ltd. ("Wintrust"), to again obtain copies of the 2009 SAIC information of Plaintiff's operating subsidiaries on file with the local SAIC offices. Wintrust provided Absaroka's Counsel with 2009 financial information for the three operating subsidiaries containing the same information as that previously provided by Inter-Credit.

161.    Upon the filing of SkyPeople's Complaint in this action, Absaroka retained the international law firm of Akin Gump Strauss Hauer & Feld LLP, which has offices, among other places, in Washington, D.C., and Beijing, China, to yet again obtain copies of the financial information of SkyPeople's subsidiaries on file with the Xi'an AIC, the Zhouzhi AIC, and the Suizhong AIC.

162.    Because, under Chinese law, Chinese attorneys working for foreign law firms are not considered "licensed" in the PRC, Akin Gump engaged Beijing's Jun You Law Firm to assist it in conducting searches for the financial information of SkyPeople's three operating subsidiaries on file with the SAIC offices in the Provinces of Shaanxi and

Liaoning.

163.    After one of the Chinese attorneys engaged by Akin Gump went to the

Zhouzhi AIC office to obtain copies of the documents filed by Shaanxi Qiyiwangguo

Modern Organic Agriculture Co., that attorney received two threatening phone calls on his

personal cell phone related to his investigation of the public SAIC records for Shaanxi

Qiyiwangguo Modern Organic Agriculture Co.  Attached as Exhibit 5 to this Answer and

Counterclaim is an affidavit of Zhao Junwen of the Jun You Law Firm describing those

telephone calls.

164.    Those threats notwithstanding, Akin Gump, assisted by the Jun You Law

Firm, obtained more than 940 pages of documents that were filed by SkyPeople's

operating subsidiaries with their respective SAIC office.  Attached as Exhibit 6 to this

Answer and Counterclaim are affidavits executed by the three attorneys in China who

were engaged by Counterclaim Plaintiff Absaroka to obtain copies of the 2009 SAIC

information of Plaintiff's operating subsidiaries on file with their respective SAIC offices.

165.    The Jun You Law Firm obtained a portion of the 2009 audit report filed by

SkyPeople Juice Group Co with the Xi'an AIC.

166.    When the Jun You Law Firm retrieved the documents of SkyPeople Juice

Group Co. filed with the Xi'an AIC, key pages of the audit report for SkyPeople Juice

Group Co. had mysteriously disappeared from the SAIC files, including the "Balance

Sheet of Dec. 31, 2009 of SkyPeople" and "Profit Statement for the Year of 2009 of

SkyPeople."  Upon information and belief, it is abnormal for a company's annual audit reports

filed with the SAIC not to include such key attachments as the balance sheet and profit

statements.

167.    Nonetheless, portions of the financial information of SkyPeople Juice Group

Co. on file with the Xi'an AIC, such as the "Financial Footnotes" obtained by the Jun You

Law Firm, contains financial information identical to the information relied upon by

Absaroka.  More specifically, as shown on Exhibit 7 to this Answer and Counterclaim, the

key financial indicators of SkyPeople Juice Group Co. contained in the portion of the

audit report obtained by the Jun You Law Firm are identical to the financial information

for 2009 relied upon by Absaroka and utilized in the preparation of the Report.

168.    Although a company is required to file its complete audited financial

statements with the local SAIC annually, no financial statements or audit reports of either

Qiyiwangguo Modern Organic Agriculture Co. or Huludao Wonder Fruit Co. were

included among the documents that the lawyers from the Jun You Law Firm were able to

gather from the local SAIC offices.

169.    Nevertheless, even with respect to Shaanxi Qiyiwangguo Modern Organic

Agriculture Co. and Huludao Wonder Fruit Co., for whom no financial statements or audit

reports were available, the information obtained by the Jun You Law Firm corroborates

the information relied upon by Absaroka, as shown on Exhibits 8 and 9 to this Answer and

Counterclaim.

170.    In issuing the June 2, 2011 press release, SkyPeople has knowingly and maliciously accused Counterclaim Plaintiffs of circulating fabricated information, when Sky People knows that, in fact, the information relied upon by Counterclaim Plaintiffs was on file with the SAIC.

171.    As a result of SkyPeople's circulation of this false information accusing Absaroka of illegalities and relying upon fabricated documents, Absaroka has been damaged in its business reputation.

172.    In falsely accusing Counterclaim Plaintiffs of relying upon fabricated and false information, SkyPeople has unjustly attempted to transfer the blame for its corporate malfeasance to the Counterclaim Plaintiffs.

173.    The June 2, 2011, press release was part of a smear campaign engineered to expose the Counterclaim Plaintiffs, and each of them, to hatred, contempt, ridicule, and obloquy because, among other things, those press releases and public filings falsely accuse them of fraud and other very serious criminal activity while engaging in their primary business activities.

174.    As a proximate result of the publication of the June 2, 2011, press release, Counterclaim Plaintiff Kevin Barnes has suffered a serious loss of reputation, professional standing, shame, mortification, and hurt feelings, all to his general damage.

175.    As a proximate result of the publication of the June 2, 2011, press release, Counterclaim Plaintiff Absaroka has suffered a serious loss of reputation, professional

48

standing, and shame.

176.    By reason of the foregoing, Counterclaim Plaintiffs, and each of them are entitled to general damages against SkyPeople according to proof at trial, but not less than $75,000.00; and to punitive and exemplary damages against SkyPeople in a sum sufficient to punish and make an example of said SkyPeople, which sum will be established according to proof at trial.

**COUNT I**
**DEFAMATION *PER SE***

177.    Counterclaim Plaintiffs Absaroka and Barnes incorporate herein by reference paragraphs 98 through 176 as though the same were set forth at length herein.

178.    Counterclaim Plaintiff Barnes has, for many years, enjoyed a good reputation as a sound and respected financial analyst. Counterclaim Plaintiff Absaroka has enjoyed, since its formation by Barnes in 2011, a good reputation as a respected private investment manager.

179.    In publishing the June 2, 2011 press release, SkyPeople made false and unprivileged defamatory statements of fact about Counterclaim Plaintiffs.

180.    The statements published to third parties were defamatory in meaning, were plainly understood by their recipients without the necessity of explanatory matter, and were defamatory *per se* because they injured Counterclaim Plaintiffs in their business reputations.

181.    By publishing the June 2, 2011 press release, SkyPeople intended to communicate to the public the false statements contained therein, which include, but are not limited to, the statements concerning the inclusion of fabricated false financial documents in the Report.

182.    SkyPeople published the false and defamatory statements in the June 2, 2011, press release in writing to unprivileged third parties including, but not limited to, the SEC and members of the financial community.

183.    The factual statements made in the press release are false because the financial information of SkyPeople's three operating subsidiaries upon which Absaroka relied in its Report was not fabricated and, in fact, was consistent with the financial information of SkyPeople's operating subsidiaries for the year ending December 31, 2009, on file with the local SAIC offices.

184.    The statements contained in the press release had a natural and probable defamatory effect on the reader without the necessity of explanatory matter and, accordingly, SkyPeople's defamatory statements are libelous *per se*.

185.    SkyPeople's action in knowingly publishing the false statements in the press release was intentional and done with express malice.  SkyPeople knew or should have known that the statements in the press release were false when made.

186.    SkyPeople published the defamatory statements about Counterclaim Plaintiffs with a high degree of awareness of their falsity, with personal spite or ill will,

and with reckless disregard for the statement's truth or falsity.

187.    SkyPeople committed such acts maliciously, oppressively, and fraudulently, with ill will and an evil intent to defame and injure Counterclaim Plaintiffs.

188.    SkyPeople knew that it was foreseeable that the defamatory statements in the press release would be repeated. SkyPeople, as the originator, is liable for each repetition of the defamatory matter by second parties.

189.    By publishing the press release, SkyPeople intended to, and did, injure Counterclaim Plaintiffs' business reputation and disparage their business.

190.    As a direct and proximate result of SkyPeople's publication of the defamatory statements about Counterclaim Plaintiffs, SkyPeople exposed Counterclaim Plaintiffs to public contempt among the members of their business and profession, deterred others from doing business with Counterclaim Plaintiffs, prejudiced Counterclaim Plaintiffs in their business and profession, and impeached Counterclaim Plaintiffs' honesty, integrity, and reputations as a law and rule abiding investment manager and an equity analyst.  Counterclaim Plaintiffs have been damaged in their reputation, profession and business.

191.    Counterclaim Plaintiffs' damages are in an amount that is currently unknown, but in excess of this Court's jurisdictional threshold.

192.    By reason of SkyPeople's defamation, Counterclaim Plaintiffs are entitled to both general damages and all actual, consequential and/or compensatory damages to be

proven at the time of trial.

193.    SkyPeople's actions alleged herein were wanton, willful, malicious and

outrageous, entitling Counterclaim Plaintiffs to exemplary and punitive damages.

194.    Counterclaim Plaintiffs are also entitled to injunctive relief requiring

SkyPeople to retract its press release and issue a press release withdrawing the statements.

**COUNT II**
**DEFAMATION *PER QUOD***

195.    Counterclaim Plaintiffs Absaroka and Barnes incorporate herein by

reference paragraphs 98 through 194 as though the same were set forth at length herein.

196.    By publishing the press release, SkyPeople intended to communicate to the

public the false statements contained therein, which include, but are not limited to, the

statements concerning the inclusion of fabricated false financial documents in the Report.

197.    SkyPeople published the false and defamatory statements in the press

release in writing to unprivileged third parties including, but not limited to, the SEC and

members of the financial community.

198.    To the extent any of the libelous statements herein are not libelous *per se*, they

are libelous *per quod*.  Because of facts and circumstances known to readers of the

press release, the statements therein tended to injure Counterclaim Plaintiffs' business.

199.    SkyPeople knew it was foreseeable that the defamatory statements in the

press release would be repeated to second parties. SkyPeople, as the originator, is liable

for each repetition of the defamatory matter by second parties.

200.    SkyPeople published the press release about Counterclaim Plaintiffs with knowledge of its falsity.

201.    SkyPeople made the defamatory and libelous statements with malice, malicious intent, and with intent to cause the harm to Counterclaim Plaintiffs.

202.    SkyPeople knew and intended that the press release would disparage the quality of Counterclaim Plaintiffs' business and intended that the press release cause Counterclaim Plaintiffs pecuniary loss.

203.    As a direct and proximate result of SkyPeople's publication of the defamatory statements about Counterclaim Plaintiffs, SkyPeople exposed Counterclaim Plaintiffs to public contempt among the members of their business and profession, deterred others from doing business with Counterclaim Plaintiffs, prejudiced Counterclaim Plaintiffs in their business and profession, and impeached Counterclaim Plaintiffs' honesty, integrity, and reputations as a law and rule abiding investment manager and an equity analyst.

204.    Counterclaim Plaintiffs have been damaged in their reputations, profession and business.

205.    Counterclaim Plaintiffs' damages are in an amount that is currently unknown, but in excess of this Court's jurisdictional threshold.

206.    By reason of SkyPeople's libel, Counterclaim Plaintiffs are entitled to all

actual, consequential and/or compensatory damages to be proven at the time of trial.

207.    SkyPeople's actions alleged herein were wanton, willful, malicious and outrageous, entitling Counterclaim Plaintiffs to exemplary and punitive damages.

208.    Counterclaim Plaintiffs are also entitled to injunctive relief requiring SkyPeople to retract its press release and issue a press release withdrawing the statements.

## COUNT III
## ABUSE OF PROCESS

209.    Counterclaim Plaintiffs Absaroka and Barnes incorporate herein by reference paragraphs 98 through 208 as though the same were set forth at length herein.

210.    SkyPeople's willful action of filing the lawsuit against Counterclaim Plaintiffs demonstrates an ulterior purpose for bringing legal action, other than resolving a legitimate legal dispute.

211.    By filing the lawsuit against Counterclaim Plaintiffs, SkyPeople sought to destroy the reputations of Counterclaim Plaintiffs as an investment manager and an equity analyst.

212.    The lawsuit against Counterclaim Plaintiffs was designed to harass Counterclaim Plaintiffs and strong-arm Counterclaim Plaintiffs into retracting the Report about SkyPeople.

213.    The lawsuit against Counterclaim Plaintiffs was also a vehicle used by SkyPeople in an attempt to cover-up its scheme to inflate artificially the price of SkyPeople's common stock through the issuance of false financial and operational

information.

214.    As a direct and proximate cause of SkyPeople's abuse of process,

Counterclaim Plaintiffs have suffered substantial damages, including expending

unnecessary legal costs.

**WHEREFORE**, Defendants/Counterclaim Plaintiffs Absaroka and Barnes

demand judgment in their favor and against SkyPeople Corporation International damages in

excess of $75,000 in an amount which may be proven at trial, together with interest, costs

and any other relief this Court may deem appropriate or necessary.

DATED this  14ᵗʰ  day of November 2011.

> ABSAROKA CAPITAL MANAGEMENT, LLC
> and KEVIN BARNES
> *Defendants*
>
>
> By:  ___/s/  Richard D. Bush_____
>          Paul J. Hickey  (5-1431)
>          Richard D. Bush   (5-2647)
>          John A. Coppede  (5-2485)
>          HICKEY & EVANS, LLP
>          1800 Carey Avenue, Suite 700
>          P.O. Box 467
>          Cheyenne, WY 82003
>          Ph: (307) 634-1525
>          Fx: (307) 638-7335
>          *Attorneys for Defendants*
>          *Absaroka Capital Management, LLC*
>          *and Kevin Barnes*

## CERTIFICATE OF SERVICE

I hereby certify that on the  14th  day of November 2011, I electronically filed the foregoing **ANSWER OF DEFENDANTS ABSAROKA CAPITAL MANAGEMENT, LLC AND KEVIN BARNES TO PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties registered for electronic filing via the CM ECF system.


         */s/   Richard D. Bush*
        HICKEY & EVANS, LLP